IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| STATE FARM MUTUAL | : | CIVIL ACTION |
| AUTOMOBILE INSURANCE | : | |
| COMPANY, et al. | : | No. 13-2172 |
| | : | |
| v. | : | |
| | : | |
| BERNARD SNYDER, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                       **November 6, 2013**

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, State Farm) bring this action against Defendants Bernard Snyder (Snyder) and his daughter, Barrie Jean Snyder, alleging Snyder violated the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. Cons. Stat. § 5101 et seq. (PAFTA), and the New Jersey Uniform Fraudulent Transfer Act, N.J. Stat. §§ 25:2-20 et seq. (NJFTA), by transferring two parcels of real property to his daughter in order to render the properties immune from execution. For the following reasons, Snyder's Rule 12(b)(6) motion to dismiss the Complaint for failure to state a claim will be granted in part and denied in part.

## FACTS

On May 18, 2006, State Farm brought a civil action against Snyder and other defendants, alleging violations of the Racketeering Influenced and Corrupt Organizations Act and the Pennsylvania Insurance Fraud Statute, and asserting various common law causes of action. On June 29, 2011, State Farm obtained a $1,085,300 judgment against Snyder, which was subsequently molded to $2,505,092.24 including attorneys' fees and costs. Approximately two years before judgment was entered against him, on or about April 20, 2009, Snyder and his now-deceased wife, Jeanette Snyder, allegedly transferred two properties to their daughter, Barrie

1

Jean Snyder, for no consideration. The first property was located in Philadelphia, Pennsylvania, and the second in Ventnor City, New Jersey.

State Farm alleges Snyder intentionally transferred those properties to "hinder, delay or defraud State Farm from collecting on its judgment and/or attaching, levying and/or executing upon the properties in the event that State Farm obtained a Judgment against [him]" in the underlying civil action. Compl. ¶ 12. Since the judgment was entered, State Farm has been unable to collect or execute on the properties, and Snyder is otherwise insolvent. State Farm also alleges because Snyder received no consideration for the transfer, at a time when the judgment against him was foreseeable, and the properties transferred represented all or substantially all of his assets, the transfer constituted two distinct fraudulent conveyances under both the PAFTA and the NJFTA. Count I of the Complaint therefore seeks to avoid the transfer of both the Pennsylvania property and the New Jersey property as a violation of the PAFTA, and Count II seeks to avoid the transfer of each property based on a violation of the NJFTA.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a Rule 12(b)(6) motion, a district court first should separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Dismissal is appropriate, for example, if

there is a dispositive issue of law. *See Bishop v. GNC Franchising LLC*, 248 F. App'x. 298, 299

(3d Cir. 2007) (citing *Neitzke v.Williams*, 490 U.S. 319, 326-27 (1989)).

Both Pennsylvania and New Jersey have adopted the Uniform Fraudulent Transfer Act

(UFTA), and the statutory provisions at issue in this motion are identical. Under each state's

law:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
> whether the creditor's claim arose before or after the transfer was made or the
> obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or (2)
> without receiving a reasonably equivalent value in exchange for the transfer or
> obligation, and the debtor . . . intended to incur, or believed or reasonably should
> have believed that the debtor would incur, debts beyond the debtor's ability to pay
> as they became due.

12 Pa. Cons. Stat. § 5104(a); N.J. Stat § 25:2-25. To state a claim for a violation of either Act,

State Farm must allege a debtor (i.e., Snyder) made a "transfer" within the meaning of the

UFTA. A "transfer" is defined as a "disposing of or parting with an asset or an interest in an

asset." 12 Pa. Cons. Stat. § 5101; N.J. Stat. § 25:2-22. The definition of "asset," in turn,

contains certain exclusions. That is, assets subject to both the PAFTA and the NJFTA do not

include "an interest in property held in tenancy by the entireties to the extent it is not subject to

process by a creditor holding a claim against only one tenant." 12 Pa. Cons. Stat. § 5101; N.J.

Stat. § 25:2-21.[1]

---

[1] State Farm alleges Snyder held "an ownership interest and right of survivorship in both
properties." Compl. ¶ 9. The Complaint does not specify how the properties were held, but does
indicate both he and his now deceased wife transferred each property jointly. *Id.* ¶ 8. In its
Response to Snyder's motion to dismiss, State Farm does not challenge Snyder's
characterization of the properties in question as owned by Snyder and his wife as tenants by the
entireties. In the absence of allegations or evidence to the contrary, property held by a husband
and wife is presumed to be a tenancy by the entireties under Pennsylvania and New Jersey law.
*See, e.g.*, *Gilliland v. Gilliland*, 751 A.2d 1169, 1172 (Pa. Super. Ct. 2000) ("Where property is
placed in the names of both the husband and wife, the creation of a tenancy by the entireties is
presumed."); *Wylie v. Zimmer*, 98 F. Supp. 298, 299 (E.D. Pa. 1951) ("When property in

Commentary to the UFTA illustrates that whether property (or an interest in property) held in a tenancy by the entireties is "subject to process by a creditor holding a claim against only one tenant" will vary with the law of a particular state.[2]  If, under Pennsylvania and New Jersey law, an interest in entireties property *is* "subject to process by a creditor holding a claim against only one tenant," then the conveyances in question involved "assets" within the meaning of the UFTA and State Farm has adequately stated a claim for a fraudulent transfer.  If, however, an interest in entireties property *is not* "subject to process by a creditor holding a claim against only one tenant," State Farm has no cognizable statutory claims and the Complaint must be dismissed.  Because State Farm invokes both Pennsylvania and New Jersey law as to the transfer of both properties, and because the application of each state's law could lead to a different result, the Court must conduct a choice of law analysis to determine which state's law applies to each of the two properties in question.

When conducting a choice of law analysis in a diversity action, this Court must look to the conflicts regime of the forum state, here Pennsylvania.  *Echols v. Pelullo*, 377 F.3d 272, 275 (3d Cir. 2004).  Where a particular choice of law inquiry is "issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage.'"  *Berg Chilling*

---

Pennsylvania is owned by husband and wife, title is held as tenants by entireties."); *Canino v. Canino*, No. 2711-05T3, 2007 WL 1712863, at *1 (N.J. Super. Ct. App. Div. June 15, 2007) (noting that N.J. Stat. § 46:3-17.3 "codifies the common law presumption that a husband and wife hold as tenants by the entirety whenever they hold property together").  The presumption that the properties in question were held in a tenancy by the entireties will apply for the purposes of deciding this motion.

[2] The commentary to the UFTA addressing the definition of an "asset" notes the definition "include[s] the interest of a tenant by the entirety although in nearly half the states such an interest cannot be subjected to liability for a debt unless it is an obligation owed jointly by the debtor with his or her cotenant by the entirety. . . .  The definition in this Act requires exclusion of interests in property held by tenants by the entirety that are not subject to collection process by a creditor without a right to proceed against both tenants by the entirety as joint debtors."

*Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006); *see also Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 91 (3d Cir. 2008) ("Although Pennsylvania courts have not explicitly addressed it, this Court has assumed that Pennsylvania's choice of law analysis employs *depecage*.").

The PAFTA does not address choice of law issues.  This Court will apply Pennsylvania's choice of law rules for tort claims because under Pennsylvania law, a fraudulent conveyance claim is generally perceived as a tort.  *See In re Sverica Acquisition Corp., Inc.*, 179 B.R. 457, 469 (Bankr. E.D. Pa. 1995) ("[T]he conclusion that a fraudulent conveyance is a tort has not been disputed in Pennsylvania jurisprudence.").  Pennsylvania follows a "flexible [choice of law] rule which permits analysis of the policies and interests underlying the particular issue before the court."  *Griffith v. United Air Lines, Inc.* 203 A.2d 796, 805 (Pa. 1964).  Applying the analysis in *Griffith*, this Court first must identify whether there are relevant differences between the states' laws affecting the disposition of the litigation.  *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007).    If there are no relevant differences, there is no conflict, and the Court can refer to the state laws interchangeably.  *Id.*  If there are relevant differences, there is an actual conflict, and the Court must then analyze the nature of the conflict and determine whether the conflict is true, false, or an "unprovided for" situation.  *Id*.

Turning first to Pennsylvania law as it relates to the definition of "asset" in the UFTA, the Pennsylvania Supreme Court has held "property owned by tenants by the entireties is not subject to the debts of either spouse, and they may alien it without infringing upon the rights of their individual creditors."  *Stauffer v. Stauffer*, 351 A.2d 236, 245 (Pa. 1976); *see also Klebach v. Mellon Bank, N.A.*, 565 A.2d 448, 450 (Pa. Super. Ct. 1989) ("[I]f only *one* spouse is a debtor, entireties property is immune from process, petition, levy, execution or sale.").  Under these, and

other Pennsylvania precedents, entireties property is "not subject to process by a creditor holding a claim against only one tenant," and cannot be considered an asset that may be fraudulently transferred under the PAFTA.

The parties agree on this point, but the inquiry does not end there. Primarily relying on a case from the Bankruptcy Court for the Eastern District of Tennessee, State Farm argues while the "physical properties themselves may not fall under the definition of 'asset' in the uniform fraudulent transfer acts," Snyder's interest in the properties—his contingent right of survivorship—is an "asset" which may be fraudulently conveyed under Pennsylvania law. Pl.'s Resp. to Mot. to Dismiss 3; *see also In re Chadwick*, No. 09-11047, 2011 WL 477858 (Bankr. E.D. Tenn. Feb. 7, 2011). When considering the definition of asset under Tennessee's version of the UFTA (which mirrors the PAFTA), the Tennessee court drew a distinction between a debtor's "present possessory interest" in the property and his or her "contingent right of survivorship" interest in the property. *In re Chadwick*, 2011 WL 477858, at \*6. Under Tennessee law, because a creditor can obtain an enforceable judgment against one spouse's right of survivorship interest, his or her interest is subject to the collection process and accordingly falls under the definition of asset, even though the "present possessory interest" does not. *Id.*

Like Tennessee, Pennsylvania recognizes separate interests in entireties property, which encompasses both a possessory interest and a right of survivorship interest. *Berhalter v. Berhalter*, 173 A. 172, 173 (Pa. 1934) ("The incidents of [a tenancy by the entirety] are unity of interest, title, time, and possession, with the right of survivorship."); *Gasner v. Pierce*, 134 A. 494, 495 (Pa. 1926) (defining tenancy by the entireties as "an interest held by a husband and wife together so long as both live, and, after the death of either, by the survivor so long as the estate lasts" (internal quotation marks omitted)). Pennsylvania's recognition of separate interests in the

possession and right of survivorship in entireties properties means the legal sufficiency of the instant Complaint turns on whether, under Pennsylvania law, the right of survivorship interest is "subject to process by a creditor holding a claim against only one tenant," and therefore falls within the definition of an asset.[3]

Whether a right of survivorship interest held by one spouse in a property held in a tenancy by the entireties is subject to process by a creditor of that spouse is currently unsettled under Pennsylvania law. Because there is no controlling decision on this issue by the Pennsylvania Supreme Court, this Court must "predict how Pennsylvania's highest court would decide this case." *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009). After careful review of the applicable precedent, the Court concludes the weight of authority suggests Snyder's right of survivorship interest was not subject to process at the time the joint conveyance occurred. This Court predicts the Pennsylvania Supreme Court would therefore find Snyder's right of survivorship interest is excluded from the definition of an asset under the PAFTA.

In arguing against this conclusion, State Farm relies primarily on *Fleek v. Zillhaver*, 12 A. 420 (Pa. 1887). In *Fleek*, the Pennsylvania Supreme Court held an enforceable lien on one spouse's right of survivorship interest could be obtained, and when the non-debtor spouse died,

---

[3] Snyder contends whether a creditor can levy against a debtor's survivorship interest in entireties property "is irrelevant in the instant action because the plaintiff did not assert a claim for levying upon the defendant's interest in the transferred entireties property." Def.'s Supp. Mem. 5. The Court rejects this argument. State Farm asserted claims for violations of the PAFTA and the NJFTA, and under both of those statutes, a "transfer" includes disposition of an asset (in this case the entireties property) or "an interest in an asset." A reasonable reading of the Complaint, construed in the light most favorable to the plaintiff, shows State Farm may be entitled to relief even if the Complaint does not directly assert a claim for levying upon Snyder's interest in the transferred properties. *Cf. Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (noting after *Twombly*, it "remains an acceptable statement of the standard . . . that courts accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief" (citation and internal quotation marks omitted)).

the entireties property could be sold in aid of execution on a judgment against the debtor-spouse. While *Fleek* does appear to suggest the right of survivorship interest held by one tenant is subject to process, and the case has never been expressly overruled, subsequent decisions have cabined and eroded *Fleek*'s holding. The weight of existing caselaw now suggests the lien on a debtor spouse's right of survivorship recognized in *Fleek* is subject to execution and process only in limited circumstances, if the non-debtor spouse dies and the creditor's expectancy in the right of survivorship is therefore realized. *See In re Hope*, 77 B.R. 470, 475 (Bankr. E.D. Pa. 1987) (concluding the nature of a creditor's interest in a debtor spouse's right of survivorship is not altogether clear under Pennsylvania law, but agreeing with the Third Circuit's understanding that "[a]t most, a creditor of either spouse may obtain a presently unenforceable lien upon that spouse's expectancy of survivorship—a lien that becomes enforceable only when the other spouse dies." (quoting *Napotnik v. Equibank & Parkvale Sav. Ass'n*, 679 F.2d 316, 319 (3d Cir. 1982)); s*ee also Beihl v. Martin*, 84 A. 953, 956 (Pa. 1912) (distinguishing *Fleek* on the basis that because one spouse cannot unilaterally alienate his or her expectancy of survivorship while the other spouse lives, "the lien on the expectant interest of [one spouse] becomes enforceable only when the expectancy ripens into a realized fact"); *Gasner*, 134 A. at 495 (holding one spouse cannot "dispose even of the expectancy of survivorship . . . and creditors of either [interest] acquire no enforceable lien by obtaining judgment or title by sale on execution").

In 1938, without mentioning *Fleek*, the Pennsylvania Supreme Court characterized a tenancy by the entireties as entitling each tenant to "enjoyment of the entirety and to survivorship," and noted neither spouse "has any individual portion which can be alienated or separated, or which can be reached by the creditors of either spouse." *Madden v. Gosztonyi Sav. & Trust Co.*, 200 A. 624, 627-28 (Pa. 1938). One year later, the same court also found a

8

"husband and wife can convey the [entireties] property free from judgments . . . against the husband and also from any contingent interest or ownership by the trustee in bankruptcy in the event of the husband surviving the wife." *C. I. T. Corp. v. Flint*, 5 A.2d 126, 128-29 (Pa. 1939). Having so found, the court held because the creditor at issue possessed nothing more than an expectancy, "[a]s long as the title was held by entireties it was not an asset of [the debtor] available for his creditors." *Id.* at 129. Because the creditors could "not have attached it or his interest in it[,] . . . [the entireties property] could have been conveyed by him and his wife so as to be forever beyond their reach." *Id.*

According to the allegations of the Complaint, this is exactly what happened here—prior to his wife's death, Snyder and his wife jointly transferred the properties in question to their daughter.[4] Their joint conveyance severed the tenancy by the entireties, and thereby extinguished any unrealized expectancy State Farm may have held in Snyder's right of survivorship. Before Snyder's wife died, State Farm had, under Pennsylvania law, "nothing more than a potential lien against the property in the event that [the debtor] should survive his wife. Meanwhile, husband and wife could convey the property free from any lien of the [creditor's] judgment." *Stop 35, Inc. v. Haines*, 543 A.2d 1133, 1136 (Pa. Super. Ct. 1988). Even if State Farm had held an actual lien at the time the properties were transferred, it was

---

[4] In its surreply to Snyder's motion to dismiss, State Farm suggests there is a factual issue outside the pleadings as to whether the properties were in fact jointly conveyed. Because this Court must limit itself to the allegations in the Complaint, it will not consider this possibility when resolving this motion to dismiss. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."); *Rehab. Inst. of N.J., Inc. v. Home Depot Inc.*, No. 12-4035, 2012 WL 5944658, at *2 (D.N.J. Nov. 27, 2012) ("An argument that relies on proof of facts outside the Complaint cannot succeed on a motion to dismiss."). The Complaint provides the following allegation with respect to this issue: "On or around April 20, 2009, Bernard Snyder . . . and his now deceased wife, Jeanette Snyder, transferred [the properties in question] to their daughter." Compl. ¶ 8. The only reasonable reading of this allegation is that the properties were jointly conveyed.

unenforceable and inchoate until Snyder's wife's death triggered his right of survivorship interest. In the interim, State Farm, the holder of the unenforceable and inchoate lien, "must hold [that lien] subject to its possible extinction in either of two events, the predecease of the [debtor], or the alienation of the estate by the joint act of the parties. The efficiency of the lien depends upon the nonhappening of either." *Beihl*, 84 A. at 956; *Murphey v. C. I. T. Corp.*, 33 A.2d 16, 18 (Pa. 1943) (citing *Beihl* and holding even where a creditor has a claim "reduced to judgment, [the claim is] subject to extinction in the event of the alienation of the estate by the joint act of the owners").

When the properties were jointly conveyed in 2009, State Farm could not have exercised any potential lien it may have held on Snyder's right of survivorship, and under Pennsylvania law, "it follows that the conveyance itself could not have been fraudulent as to [the potential lien holder]." *Stauffer*, 351 A.2d at 245. In these circumstances, the weight of Pennsylvania authority compels the conclusion that Snyder's right of survivorship interest was not subject to process when the properties were conveyed, and the properties at issue and any interests therein would therefore be excluded from the definition of asset under the PAFTA. Accordingly, if Pennsylvania law applies to State Farm's claims, the claims must be dismissed.

With respect to Count II, New Jersey state law differs regarding the ability of a creditor to subject an interest in entireties property to process when holding a judgment against only one tenant. Contrary to Pennsylvania law, "[i]t is well established [under New Jersey law] that a debtor's interest in property held as tenant by the entirety may be reached by the debtor's creditors." *S.E.C. v. Antar*, 120 F. Supp. 2d 431, 449-50 (D.N.J. 2000) (citing *Newman v. Chase*, 359 A.2d 474 (1976), *aff'd*, 44 F. App'x 548 (3d Cir. 2002)); *see also United States v. Avila*, 88

F.3d 229, 234 (3d Cir. 1996) ("New Jersey long has recognized that a lien may attach to the interest of one spouse in property held by the entireties.").[5]

In 1959, the New Jersey Supreme Court held the right of survivorship may be encumbered, as "the judgment creditors of either spouse may levy and execute upon their separate rights of survivorship." *King v. Greene*, 153 A.2d 49, 60 (N.J. 1959). This holding has been repeatedly affirmed by the New Jersey Supreme Court in subsequent years. *See Newman,* 359 A.2d at 477 ("Since the decision in *King*[,] . . . it has been the law of this State that the purchaser at an execution sale under a judgment entered against a tenant by the entirety acquires the right of survivorship of the debtor spouse."); *Freda v. Commercial Trust Co. of N.J.*, 570 A.2d 409, 414 (N.J. 1990) ("[A] judgment creditor of a debtor-spouse may levy on and sell that spouse's right of survivorship").

In light of these settled principles, state and federal courts applying New Jersey law have found a debtor's interest in entireties property is subject to process and such an interest therefore constitutes an asset within the meaning of the NJFTA. *See United States v. Grello*, No. 07-6123, 2010 WL 4181059, at *9 (D.N.J. Oct. 20, 2010); *Belding & Bernhard, Inc. v. Advokat*, No. 3263-02, 2007 WL 1108926, at *7 (N.J. Super. Ct. App. Div. Apr. 16, 2007) ("The absence of pertinent case law reflects the clarity of the UFTA definition of asset as including one spouse's interest in a tenancy by the entirety, which is subject to process under New Jersey law."). This Court agrees, and finds New Jersey law dictates this result.[6] Having found Snyder's

---

[5] As in Pennsylvania, the entireties property itself may not be partitioned during the marriage. *See Freda v. Commercial Trust Co. of N.J.*, 570 A.2d 409, 413 (N.J. 1990). As set forth above, however, certain interests in a tenancy by the entireties property, including the right of survivorship, are subject to attachment by the creditor of one spouse. *Id.* at 414.

[6] Although the parties have not addressed the issue, the Court notes that in 1988, the New Jersey legislature passed a law disallowing spouses in a tenancy by the entireties to "sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation

11

interests in the properties are subject to process within the meaning of New Jersey state law, if New Jersey law applies to the properties at issue, State Farm's fraudulent transfer claims can withstand Snyder's motion to dismiss.[7]

Because State Farm can state a claim under the NJFTA, but not under the PAFTA, an actual conflict exists between Pennsylvania and New Jersey state law. When presented with an actual conflict, the Court must examine the "governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *Hammersmith*, 480 F.3d at 230. A true conflict only exists where "*both* of the jurisdictions' interests would be impaired by the application of the other's laws." *Id.* If there is a true conflict, this Court must apply the "law of the state having the most significant contacts or relationships with the particular issue." *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005) (quoting *In re Estate of Agostini*, 457 A.2d 861, 871 (Pa. 1983)). A false conflict exists where "only one jurisdiction's governmental interests would be impaired by the application of the other

---

without the written consent of both spouses." N.J. Stat. § 46:3-17.4. In one case, a bankruptcy court in the Middle District of Florida, applying New Jersey law, interpreted the statute as no longer permitting a creditor of only one spouse to execute on an interest in entireties property, thus precluding the creditor from "maintaining a fraudulent transfer action to recover proceeds which she would not otherwise be able to access." *In re Montemoino*, 491 B.R. 580, 591 (Bankr. M.D. Fla. 2012). The Court declines to adopt the holding in *Montemonio* to the extent it suggests that the statute has overruled, sub-silentio, New Jersey common law developed over the better part of a century. Without the benefit of briefing on the issue or a ruling by the New Jersey Supreme Court, this Court will continue to follow the rules set forth in *King* and its progeny. In any event, it is not even clear from the face of the Complaint that the statute applies; the statute was approved on January 5, 1988, and included a proviso that it "shall take effect on the 90th day after enactment and shall be applicable to all tenancies by entireties which are created on or after the effective date of this act." *See Freda*, 570 A.2d at 411 (deciding not to consider the statute after finding it did not apply to the property in question). The creation of the tenancy at issue here could well have predated the passage of this statute.

[7] Because Snyder only challenges whether the properties in question are "assets" under the UFTA, this Court need not analyze the sufficiency of the Complaint as it relates to the remaining elements of State Farm's cause of action.

jurisdiction's laws." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991).[8] Where there is a false conflict, the law of the interested jurisdiction applies. *Id.* An "unprovided-for" situation is one in which neither jurisdiction's interest would be impaired if its law is not applied. In those cases, "lex loci delicti, the law of the place of the wrong, supplies the substantive law to be applied." *Garcia*, 421 F.3d at 220.

Here, conflicting state interests exist with respect to each property at issue, and each of the state's interests will be impaired by the application of the other state's law. New Jersey has an interest in preserving a creditor's right to levy certain property interests held by one spouse in a tenancy by the entireties. Pennsylvania, on the other hand, has an interest in maintaining a stronger entireties policy, which prohibits the creditor of one spouse from subjecting any interest in an entireties property to process while both spouses live. Applying Pennsylvania law to the properties will impair New Jersey's interest in protecting rights State Farm (a company that does business in New Jersey) may otherwise have as Snyder's creditor. Applying New Jersey law will impair Pennsylvania's interest in protecting Snyder's (a Pennsylvania resident) right to alienate his interests in entireties property free from any judgment or claim a creditor may have against him. In these circumstances, a true conflict exists with respect to each property.

When determining which state's law to apply in a true conflict situation, the Court must evaluate each state's respective contacts with the gravamen of the action, and also weigh each state's interests as they relate to those contacts. *See Blakesley v. Wolford*, 789 F.2d 236, 239 (3d Cir. 1986) (noting the *Griffith* methodology "combines the approaches of both Restatement II

---

[8] As the Third Circuit has noted, "there is some inconsistency in the way Pennsylvania and federal courts have defined a false conflict." *Hammersmith*, 480 F.3d at 229. Some courts have considered a conflict "false" if there is no conflict. In *Hammersmith*, the Court of Appeals found it is "incorrect to use the term 'false conflict' to describe the situation where the laws of two states do not differ. If two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary." *Id.* at 230.

(contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)"). The inquiry requires more than a "mere counting of contacts"; instead, the court "must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue." *Hammersmith,* 480 F.3d at 231 (citations and alteration omitted); *see also Taylor*, 265 F. App'x at 90-91 (noting "[t]he policy underlying a state's law is relevant only to the extent it is implicated by that state's contacts with the litigation"). The contacts to be taken into account include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145 (1971).

The first contact, the place where the injury occurred, will be given no weight in this analysis, because "such as in the case of fraud and misrepresentation . . . there [is] little reason in logic or persuasiveness to say that one state rather than another is the place of injury." *Id.* § 145 cmt. e. The second contact, the place where the conduct giving rise to the injury occurred, is inapplicable, because it is not clear from the Complaint where the conduct took place. The third contact is relatively neutral. State Farm does business in both Pennsylvania and New Jersey and is headquartered in Illinois. Snyder's status as a Pennsylvania resident may have an incremental influence whether or not apply Pennsylvania law to both properties, but it does not outweigh the considerations set forth below. The single most important contact to each state is the fourth. State Farm is attempting to execute on two properties to collect on a judgment, and Snyder allegedly conveyed the properties to avoid losing them to State Farm. The properties thus serve as the focal point between the parties and their respective interests, the place, if any, where the

relationship between the parties is centered.  The properties are not only the strongest contact to

the litigation, each property is central to each state's respective interest in the dispute.

As a general matter, where choice of law issues arise in litigation concerning real

property, the location of the property is often dispositive because each state has a strong interest

in applying its own laws to property within its borders.  *See, e.g.*, *Metex Mfg. Corp. v. Manson*

*Envtl. Corp.*, No. 05-2948, 2008 WL 474100, at *5 (D.N.J. Feb. 15, 2008) (declining to apply

the NJFTA to a property located in Canada, noting "[s]ince the property is located in Canada,

Canada has the stronger interest in making sure that property located in its jurisdiction was not

fraudulently transferred"); *cf. Clarke v. Clarke*, 178 U.S. 186, 191 (1990) ("[I]t is a principle

firmly established that to the law of the state in which the land is situated we must look for the

rules which govern its descent, alienation, and transfer.").  Many courts have found fraudulent

conveyance claims should generally be governed by the law of the state in which the property is

located. *See Metex,* 2008 WL 474100, at *6 (collecting cases).

Although the location of the property is not necessarily dispositive under Pennsylvania's

choice of law rules, the Court finds it carries dispositive weight in the conflict analysis in this

case.  The properties at issue form the entire basis for State Farm's claims—the fraudulent

conveyance of a property or an interest in a property.  It is also the properties themselves that

implicate both of the state interests present in this case—Pennsylvania's entireties policy and

New Jersey's creditor policy.  Indeed, it is the divergence of each state's law on the ability to

encumber one spouse's interest in an entireties property that necessitated the conflict of laws

analysis in the first place.  Property is at the center of this dispute, and the location of each

property is the primary contact that strengthens or otherwise influences the application of each

state's law.  The property's presence or absence in each state tips the scale when weighing each state's respective interest in the application of its laws.

This Court therefore concludes Pennsylvania law, (the PAFTA), should apply to the Pennsylvania property and New Jersey law, (the NJFTA), should apply to the New Jersey property.  Because Snyder's interest in the Pennsylvania property is not an interest that can be fraudulently transferred under the PAFTA (and because the PAFTA does not apply to Snyder's transfer of the New Jersey property), State Farm has failed to state a claim under the PAFTA.  Accordingly, Snyder's motion to dismiss will be granted as to Count I.  The motion to dismiss will also be granted as to Count II insofar as that Count alleges Snyder's transfer of the Pennsylvania property violated the NJFTA.  The motion will be denied as to Count II insofar as it alleges Snyder's transfer of the New Jersey property violates the NJFTA.

An appropriate order follows.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, J.